**Ellen MELVILLE, Plaintiff,**

**v.**

**Kenneth APFEL, Commissioner of Social Security, Defendant.**

**No. 96–CV–6294 (FB).**

United States District Court,
E.D. New York.

June 4, 1998.

Arnold S. Cohen, Queens Legal Services Corp., Long Island City, NY, for Plaintiff.

Zachary W. Carter, United States Attorney, Eastern District of New York, By Stephen J. Riegel, Assistant United States Attorney, Brooklyn, NY, for Defendant.

## *MEMORANDUM AND ORDER*

BLOCK, District Judge.

Plaintiff Ellen Melville ("Melville") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act") seeking review of the Commissioner of Social Security's ("Commissioner's")[1] denial of her application for Supplemental Security Income ("SSI"). The Commissioner has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Melville has cross moved for judgment on the pleadings. Melville contends that the ALJ erred in determining that she was not disabled

---

1. Kenneth Apfel was sworn in Commissioner of Social Security on September 29, 1997. Thus, he should be substituted as defendant in place of John J. Callahan, former Acting Commissioner of Social Security, and Shirley S. Chater, former Commissioner of Social Security. Fed.R.Civ.P. 25(d). No further action need be taken to continue this suit.

because she was capable of performing her past relevant work as a clerk. For the reasons discussed below, the Court denies Melville's motion, grants the Commissioner's motion, and dismisses the complaint.

## BACKGROUND

Melville was diagnosed in April 1993 as suffering from degenerative joint disease in her knees. Melville applied for SSI on June 13, 1994. Her application was denied initially and upon reconsideration. Melville requested an administrative hearing, and a hearing was conducted on September 21, 1995. Melville appeared without the assistance of counsel. At the time of the administrative hearing, Melville was 53 years old. She testified that she was currently unemployed, but had worked as a clerk for the New York City Department of Social Services ("DSS") for seven years at two different jobs in order to receive welfare benefits. In a decision dated January 24, 1996, the ALJ found that Melville was not disabled within the meaning of the Act and was not entitled to receive benefits.

Applying the requisite five-step analysis to Melville's claims, *see Balsamo v. Chater,* 142 F.3d 75, 79 (2d Cir.1998); *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996), the ALJ found that: (1) Melville had not engaged in substantial gainful activity since filing her application on June 13, 1994; (2) the medical evidence established that Melville suffered from a severe musculoskeletal impairment, but that she did not have an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1; (3) Melville retained the residual functional capacity ("RFC") to perform her past relevant work as a clerk, an occupation consistent with sedentary exertional demands; and (4) since Melville retained the RFC to perform her past relevant work, a finding of not disabled was required. Because the ALJ found that Melville could perform her past relevant work, he did not proceed to the fifth step—whether there was other work in the economy that Melville could perform. *See Balsamo,* at 79. On October 24, 1996, the Appeals Council denied Melville's request for review. The ALJ's determination therefore stands as the Commissioner's final determination in this case.

## DISCUSSION

In reviewing a determination of the Commissioner, the Court is limited to determining whether the Commissioner's conclusions are " 'supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.' " *Beauvoir v. Chater,* 104 F.3d 1432, 1433 (2d Cir.1997) (quoting *Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir.1990)); *see also Schaal v. Apfel,* 134 F.3d 496 (2d Cir.1998); *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir.1996). Substantial evidence has been described by the Supreme Court as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *see also Diaz v. Shalala,* 59 F.3d 307, 314 (2d Cir. 1995).

Melville argues that the ALJ erred in resting his determination that she was not disabled upon her ability to perform her past relevant work as a clerk at DSS, because her DSS jobs were a condition of her continued receipt of welfare benefits and were not salaried positions. Notably, Melville does not contest the ALJ's finding that she retains the RFC to perform sedentary work. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether the claimed impairment constitutes a disability, the Commissioner considers, *inter alia,* whether the impairment prevents the claimant from performing her "past relevant work." 20 C.F.R. § 416.920(e). The regulations clearly provide that if a claimant can still perform her past relevant work, the Commissioner will find that she is not disabled. *Id.* The regulations do not provide that the past work must have been salaried in order to qualify as relevant. Indeed, the manner in which the claimant was compen-

sated—whether in the form of continued welfare benefits or a salary—has no bearing upon the issue at hand, namely, whether the claimant retains the physical capability to perform a certain category of work that she performed in the past.

Melville contends that "past relevant work" is equivalent to "substantial gainful activity" and maintains that because her work was not "gainful," it cannot be considered relevant. This argument finds no support in the regulations. In support of her claim that past work must be salaried to be relevant, Melville looks to 20 C.F.R. § 416.965(a), which defines the term "work experience" as, in part, past work that constituted "substantial gainful employment." However, this regulation, entitled "Your work experience as a vocational factor," is triggered at a later step in the five-step analysis—*after* the ALJ has determined that a claimant cannot perform her past relevant work because of her physical impairment and *after* the burden has shifted to the Commissioner to prove that the claimant is capable of performing "any other work." 20 C.F.R. § 416.920(f)(1); *see also Schaal*, 134 F.3d at 501. The regulation simply does not provide that the inquiry into whether a claimant has the physical capacity to perform her past relevant work additionally requires the ALJ to consider whether the past work was salaried or involved another type of compensation.

In any event, even if "past relevant work" is equated with "gainful work activity," as Melville contends, it is apparent that Melville's work at the DSS qualifies as gainful. Melville testified at her hearing that her jobs at DSS involved filing, photocopying, and helping people fill out application forms. The regulations provide that "[w]ork activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972(b). Here, the types of duties performed by Melville at her DSS jobs clearly involved the kind of work that is usually done for pay or profit, and therefore qualify as "gainful." Indeed, Melville's continued receipt of welfare benefits as the result of her employment is arguably a form of "pay or profit" that would cause the work to be considered "gainful."

To the extent that Melville argues that the ALJ failed to adequately develop the record in light of her *pro se* status, *see Echevarria v. Secretary of Health & Human Services*, 685 F.2d 751, 755 (2d Cir.1982) (quoting *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir.1980)), this argument is also without merit. At the start of the administrative hearing the ALJ informed Melville of her right to have counsel present during the hearing and made sure that she wished to proceed without counsel. The ALJ conducted an extensive examination of Melville, inquiring in detail about her living conditions, familial responsibilities, duties at her DSS jobs, daily activities and medical condition. Melville testified that she routinely used public transportation to visit her mother and friends, to go shopping and run errands. Fourteen documents were received into evidence, including notes from examinations by Melville's physician, Dr. Ira L. Salom, a consultative examination by Dr. K. Seo, the results of x-rays taken of Melville's left knee and left hand, a note from Jill Einhorn, a podiatrist who was treating Melville for a heel spur, and the result of an MRI on Melville's left knee. The Court observes that the MRI was unremarkable with no demonstration of internal derangement, and that the notes from Dr. Seo and Dr. Salom indicated that she was capable of performing work consistent with a sedentary level of exertion.

## CONCLUSION

As the ALJ's determination is clearly supported by substantial evidence, the Court denies Melville's motion for judgment on the pleadings, grants the Commissioner's motion for judgment on the pleadings and, accordingly, dismisses the complaint.

**SO ORDERED.**