Ellen MELVILLE, Plaintiff–Appellant,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant–Appellee.

Docket No. 98–6176

United States Court of Appeals, Second Circuit.

Argued: July 1, 1999

Decided: Dec. 20, 1999

Daniel D. Kuhn, Staten Island, New York (Kuhn & O'Toole, Staten Island, New York, Kenneth Rosenfeld, James M. Baker, Northern Manhattan Improvement Corp., New York, New York, on the brief), for Plaintiff–Appellant.

Stephen J. Riegel, Assistant United States Attorney, Brooklyn, New York (Zachary W. Carter, United States Attorney for the Eastern District of New York, Deborah B. Zwany, Varuni Nelson, Kathleen A. Mahoney, Assistant United States Attorneys, Brooklyn, New York, on the brief), for Defendant–Appellee.

The Legal Aid Society, New York, New York (Helaine M. Barnett, Civil Division, Scott A. Rosenberg, Kathleen M. Kelleher, Civil Appeals & Law Reform Unit, New York, New York, Marshall Green, Ian F. Feldman, Bronx Neighborhood Office, Bronx, New York, Warren B. Scharf, Maria A. Pizzimenti, Brooklyn Neighborhood Office, Brooklyn, New York, of counsel), filed a brief as Amicus Curiae in support of Appellant.

Before: KEARSE, STRAUB, and POOLER, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Ellen Melville appeals from a final judgment of the United States District Court for the Eastern District of New York, Frederic Block, *Judge*, dismissing her complaint against defendant Commissioner of Social Security ("Commissioner") for supplemental security income ("SSI") under § 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. § 301 *et seq.* (1994), on account of her disability between June 1994 and December 1996. The Commissioner denied benefits on the ground that Melville was able to perform her past relevant work and hence was not disabled. Melville contended that the Commissioner had overlooked the fact that the activity to which he referred was not compensated work but was instead "workfare," *i.e.*, work required in order

for Melville to receive public assistance, or "welfare," benefits. The district court dismissed the complaint on the ground that workfare constitutes substantial gainful activity within the meaning of the regulations promulgated under the Act. For the reasons that follow, we vacate the judgment of the district court and remand to the Commissioner for further proceedings.

## I. BACKGROUND

Melville was diagnosed with degenerative joint disease of the knees in 1993 at the age of 51. In June 1994 she applied for SSI on the ground that she was disabled. As this appeal does not involve any dispute as to Melville's physical condition or the medical evidence evaluating it, we summarize principally the record concerning her work history.

Melville's SSI application stated that she had arthritis of the knees and hands, with disintegration in the knees, and that she had suffered from that condition since 1978. In response to questions as to jobs held and duties performed after the onset of her condition, Melville stated that she had worked three days a week as a clerk for seven years, filling out forms and "stuffing letters." However, she stated that she had "worked only for welfa[re] check."

Melville's claim for benefits was denied initially and on reconsideration, and Melville requested a hearing before an administrative law judge ("ALJ"). Proceeding *pro se* at the ensuing hearing, Melville testified in pertinent part as follows when questioned by the ALJ as to her work history:

I can't work full-time, my doctor told me that. I was working for Welfare. I worked five years at 250 Church Street as a clerk. And then I worked two years for here in Fair Hearing at 80 Center Street.

Q. Fair Hearing at 80 Center Street. You mean the Department of Social Services?

A. Uh-huh.

Q. That's New York State, isn't it? Is it?

A. I don't know what it is.

Q. And what did you do as a clerk for the five years for Welfare?

A. Just, you know, took time people reported in and did some filing. That's it, nothing really important.

. . . .

Q. You were a time keeper?

A. Yeah.

Q. So you kept track of time and you did filing?

A. Uh-huh.

Q. And what else, typing?

A. No.

Q. No. Photocopying?

A. Yeah, I did that, too.

Q. Answer the phone?

A. No.

Q. And is that five years at the same place?

A. Yes.

Q. And where was that?

A. 250 Church Street.

Q. Well, what sort of—was that for the city?

A. Yeah.

Q. City agency?

A. Yes, it was.

Q. Health—human resources or what, do you know?

A. It was forms like you fill out here.

Q. Did you complete forms, too, fill out them—

A. Oh, no, no.

Q. —for people?

A. Never. No, we weren't allowed to do that.

Q. Did you work as a receptionist also there?

A. No.

Q. No. It was after the five years at 250 Church that you worked as a clerk at Fair Hearing?

A. Fair Hearing, yeah.

Q. What did you do?

A. You filled out forms for people that were on Welfare that were applying for hearings. You put their name and their case number and the date of their hearing on their form.

. . . .

Q. And you did that work until when?

A. '91. '91.

Q. And do you remember what month?

A. I think it was March or April of '91, I think.

Q. And what happened to that job?

A. Well, I don't know. There was a mix up about, you know, the car fare they used to give you.

. . . .

Q. What was the mix up about the car fare?

A. I don't know, something about the—they claimed that I didn't fill out my time card right. Or I was—or it was mix up somehow. I don't know. But then when I went down to—

Q. But did they let you go? Was that it?

A. Yeah, and then they told me to go home. And then when I went back to—they gave me my car fare, the Fair Hearing I applied for, and then told me that when I back [*sic*] to East 60th Street, they told me that I have to wait to be sent to a job. And then they said that when I went to this program for the schooling for the nine, eight hours, they told me I was dismissed because I can't work full-time.

Q. And did you work full-time—

A. No.

Q. —when you were working as a clerk?

A. No. Never worked full-time.

Q. Never in your life?

A. No. I worked maybe two, three days a week. That was it.

Q. But the two or three days you worked, did you work an eight-hour day?

A. Yes. They gave you certain hours that you had to work within those two weeks.

Q. Have you looked for other work?

A. No.

(Hearing Transcript, September 21, 1995 ("Tr."), at 8–12.)

In a decision dated January 24, 1996 ("ALJ Decision"), the ALJ found that Melville was not disabled within the meaning of the Act. He stated, in pertinent part, as follows:

The Administrative Law Judge finds no factors which would preclude the claimant from carrying out the demands of her past relevant work as a clerk. The claimant was employed in this capacity from 1984 through 1991. In the performance of that occupation, the claimant was required to perform no lifting activities and engaged in essentially sedentary work.... The claimant suffers from heel spurs, affecting the right foot, which have limited her capacity to engage in prolonged walking and standing activities. However, the claimant's past relevant work was sedentary in nature, requiring her to engage in no prolonged periods of walking and standing or heavy lifting....

. . . .

Because the claimant has retained the residual functional capacity to perform her past relevant work, a finding of not disabled is required.

ALJ Decision at 2–4. The ALJ made no mention of the fact that Melville's work for the Department of Social Services ("DSS") during the 1984–1991 period was workfare. Melville administratively challenged the ALJ's decision, but the Appeals Council

adopted the ALJ's decision as the final decision of the Commissioner.

Melville commenced the present action seeking reversal of the Commissioner's decision on the ground that it was not supported by substantial evidence and was contrary to law. She argued that her workfare activity at DSS was not relevant work because she worked only to maintain eligibility for public assistance, and hence that activity did not constitute substantial gainful activity within the meaning of the Act and the regulations promulgated by the Social Security Administration ("SSA"). The Commissioner, arguing that the ALJ had performed the five-step analysis required by SSA regulations, moved for judgment on the pleadings. Melville cross-moved for judgment, purportedly also on the basis of the pleadings; however, she supported her motion with an affidavit. It stated principally as follows:

6. The Commissioner[ ] . . . denied my 1994 application on the basis that I could perform my past job as a clerk for the welfare department.

7. The job I had working for the welfare department was during the time period of approximately April 1984 through April 1991.

8. I was told by my caseworker at welfare that I was required to work for the welfare department in order for me to continue receiving my welfare check. All the work I did was for the welfare department.

9. I was not paid for any of the work I did.

10. The only money I received for working was two dollars for lunch and money for taking public transportation to Manhattan where the job was.

11. Because I cooperated with the work program I was able to continue receiving my monthly welfare grant and medicaid.

12. The last job I had where I received an actual pay check was in approximately 1961 when I worked for the telephone company.

(Affidavit of Ellen Melville dated November 10, 1997, ¶¶ 6–12.)

In a Memorandum and Order dated June 4, 1998, reported at 5 F.Supp.2d 139, the district court denied Melville's motion and granted the Commissioner's motion to dismiss. The court stated in part as follows:

> The regulations clearly provide that if a claimant can still perform her past relevant work, the Commissioner will find that she is not disabled. . . . The regulations do not provide that the past work must have been salaried in order to qualify as relevant. Indeed, the manner in which the claimant was compensated—whether in the form of continued welfare benefits or a salary—has no bearing upon the issue at hand, namely, whether the claimant retains the physical capability to perform a certain category of work that she performed in the past.

5 F.Supp.2d at 140–41. The court also concluded that

> even if "past relevant work" is equated with "gainful work activity," as Melville contends, it is apparent that Melville's work at the DSS qualifies as gainful. Melville testified at her hearing that her jobs at DSS involved filing, photocopying, and helping people fill out application forms. The regulations provide that "[w]ork activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972(b). Here, the types of duties performed by Melville at her DSS jobs clearly involved the kind of work that is usually done for pay or profit, and therefore qualify as "gainful." Indeed, Melville's continued receipt of welfare benefits as the result of her employment is arguably a form of "pay or profit" that would cause the work to be considered "gainful."

5 F.Supp.2d at 141. Judgment was entered dismissing the complaint; this appeal followed.

## II. DISCUSSION

■ On appeal, Melville argues, *inter alia*, that as a matter of law, workfare assignments cannot be considered past relevant work for purposes of assessing entitlement to SSI disability benefits. The Legal Aid Society, as *amicus curiae* in support of that position, argues principally that SSA "has consistently recognized that welfare benefits are not earnings and should not be treated as such. SSA views welfare benefits issued to workfare program participants as assistance benefits based on need," and that even "where treated as income, welfare benefits are *always* considered *unearned* income and never considered wages." (Legal Aid Society brief as *amicus curiae* at 10 (citing 20 C.F.R. §§ 416.1124(c)(2) and (12), 416.1110(a), and 416.1120).) Alternatively, Melville contends that benefits should not have been denied in her case because her work on the unpaid workfare assignment at DSS in 1984–1991 did not meet the regulatory definition of past relevant work or substantial gainful activity, or at the very least that the ALJ failed to develop the record sufficiently to show that her work at DSS met those definitions.

We reject Melville's first contention, that is, that performance of a workfare assignment can never be considered evidence of a claimant's ability to perform substantial gainful work. The Social Security Act ("Act"), though defining "disability" in terms of past work and ability to perform future work, does not address the significance of workfare. Although the Commissioner has not promulgated a regulation on the issue, his position in this suit plainly is that the ability to perform workfare assignments may be indicative of an ability to perform substantial gainful work. This is a permissible interpretation of the statute and hence it is entitled to deference, *see Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), as are the regulations consistent with that view, since they are neither arbitrary nor capricious, nor manifestly contrary to the Act, *see, e.g., Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994); *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. at 844, 104 S.Ct. 2778. We are not persuaded to the contrary view by the *amicus*'s invocation of SSA regulations stating that welfare benefits are not to be considered earnings. Not all disabled persons are eligible for SSI; such benefits are available only to those who have limited income and resources. *See* 42 U.S.C. § 1382(a) (1994); *Schweiker v. Wilson*, 450 U.S. 221, 224 n. 2, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981). The regulations cited by the *amicus* are principally sections designed to assist in the determination of whether the claimant meets SSI financial criteria. The Commissioner's view that those sections do not govern the evaluation of ability to work is not arbitrary or capricious, for a claimant's financial circumstances have no necessary bearing on her physical or mental ability to do basic work activities.

For the reasons that follow, however, we conclude that the ALJ did not adequately consider the fact that Melville's 1984–1991 activity was workfare, and did not perform the analysis or develop the record required by the regulatory scheme. We therefore remand to the Commissioner for further proceedings.

### A. Disability Decisions and the Standard of Review

■ The Act provides that a person is disabled "if [s]he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (Supp. III 1997). The Act clarifies that "an individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he

is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 1382c(a)(3)(B) (1994). The claimant generally bears the burden of proving that she is disabled under the statute, but "if the claimant shows that [her] impairment renders [her] unable to perform [her] past work, the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll v. Secretary of Health and Human Services*, 705 F.2d 638, 642 (2d Cir.1983).

SSA regulations establish a one-to-five-step sequential process by which the Commissioner is required to evaluate an application for disability benefits. *See Bowen v. Yuckert*, 482 U.S. 137, 140–42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Bush v. Shalala*, 94 F.3d 40, 44–45 (2d Cir.1996); 20 C.F.R. § 416.920 (1999). The answer to each step's question determines whether the next step need be reached. First, the Commissioner determines whether the claimant is currently performing substantial gainful work; if she is, the claim is denied without the need to conduct further inquiry. Second, if the claimant is not performing such work, the Commissioner must make a finding as to whether the claimant suffers from a severe impairment that significantly limits her physical or mental ability to do basic work activities; if no such impairment is found, the claim is denied at that step. Third, if such an impairment is found, it is compared to the impairments listed in the appendix to the regulations; if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled, and the claim is granted. Fourth, if the impairment is not the equivalent of a listed impairment, the claimant must show that she cannot perform her former relevant work; if she does not make that showing, the claim is denied. Fifth and finally, if the claimant has shown that she cannot perform her former relevant work, the

burden then shifts to the Commissioner to show that the claimant "still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986). It is the fourth-step inquiry, as it concerns the relevance of a claimant's prior activity, discussed in greater detail in part II.B. below, that is the focus of the present appeal.

■ Because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record. *See, e.g., Echevarria v. Secretary of Health and Human Services*, 685 F.2d 751, 755 (2d Cir.1982). Thus, SSA regulations provide that the ALJ

shall inquire fully into the matters at issue and shall receive in evidence the testimony of witnesses and any documents which are relevant and material to such matters. If the [ALJ] believes that there is relevant and material evidence available which has not been presented at the hearing, he may adjourn the hearing or, at any time, prior to the filing of the compensation order, reopen the hearing for the receipt of such evidence.

20 C.F.R. § 702.338 (1999). Further, where the claimant is unrepresented by counsel, the ALJ has a duty to probe scrupulously and conscientiously into and explore all of the relevant facts, *see, e.g., DeChirico v. Callahan*, 134 F.3d 1177, 1183 (2d Cir.1998), and to ensure that the record is adequate to support his decision. *See, e.g., Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir.1999) (remanding where ALJ relied on medical records containing significant gaps); *Pratts v. Chater*, 94 F.3d 34, 37–38 (2d Cir.1996) (same).

■ In reviewing the Commissioner's denial of benefits, the courts are to uphold the decision unless it is not supported by substantial evidence or is based on an error of law. *See, e.g., Balsamo v. Chater,*

142 F.3d 75, 79 (2d Cir.1998); *Valente v. Secretary of Health and Human Services,* 733 F.2d 1037, 1041 (2d Cir.1984) (scope of review by district court and court of appeals is the same). It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled, *see Pratts v. Chater,* 94 F.3d at 37, or to answer in the first instance the inquiries posed by the five-step analysis set out in the SSA regulations. Nor may we properly affirm an administrative action on grounds different from those considered by the agency. *See, e.g., SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1760, 91 L.Ed. 1995 (1947).

## B. *The Meaning of "Past Relevant Work"*

As indicated above, to satisfy the statutory definition of disability, a claimant must be "not only unable to do [her] previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy," 42 U.S.C. § 1382c(a)(3)(B). The issue addressed in the fourth step of the five-step sequential inquiry required by the SSA regulations, *i.e.,* whether the claimant can perform her former relevant work, not only corresponds to the first part of the definition but also may provide insight into the claimant's ability to perform other kinds of substantial gainful work. SSA regulations and policy rulings ("Social Security Rulings" or "SSRs") reflect this dual significance. A regulation explains that "[t]he work that you have done during any period in which you believe you are disabled may show that you are able to do work at the substantial gainful activity level." 20 C.F.R. § 416.971 (1999); *see also* SSR 96–8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96–8p"), 1996 WL 374184, at *1 (S.S.A. July 2, 1996) ("In disability determinations and decisions made at steps 4 and 5 of the sequential evaluation process ... the individual's ability to do past rele-

vant work and other work must be considered....").

A number of the policy statements and regulations expressly address a claimant's residual functional capacity, or "RFC," to do past relevant work, or "PRW," terms they define partially in terms of substantial gainful activity, or "SGA." Thus, SSR 96–8p states that

> RFC is what an individual can still do despite his or her limitations.... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

SSR 96–8p, 1996 WL 374184, at *2. This policy statement adds that even if the claimant cannot work the equivalent of 8 hours a day, for 5 days a week, "[p]art-time work *that was substantial gainful activity,* performed within the past 15 years, and lasted long enough for the person to learn to do it constitutes past relevant work, and an individual who retains the RFC to perform such work must be found not disabled." *Id.* at *8 n. 2 (emphasis added).

In Social Security Ruling 82–62, Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, In General ("SSR 82–62"), 1982 WL 31386 (S.S.A. 1982), the SSA sought "[t]o state the policy and explain the procedures for determining a disability claimant's capacity to do past relevant work (PRW) as set forth in the regulations," *id.,* 1982 WL 31386, at *1, and to explain when past work is "relevant." It stated that "[i]n the fourth step of th[e sequential evaluation] process, consideration is given to the individual's capacity to perform PRW," and that in order for the SSA to find the claimant disabled, it must find that her " 'impairment ... prevent[s her] from doing past relevant work.' " *Id.* (quoting 20 C.F.R.

§§ 404.1520(e), 416.920(e)). This SSR adds:

"We consider that *your work experience* applies [i.e., *is relevant*] *when it was done within the last 15 years*, lasted long enough for you to learn to do it, *and was substantial gainful activity [SGA]*."

SSR 82–62, 1982 WL 31386, at *1 (quoting 20 C.F.R. §§ 404.1565(a), 416.965(a) (brackets in SSR 82–62) (emphasis ours)). Social Security Ruling 86–8, Titles II and XVI: The Sequential Evaluation Process ("SSR 86–8"), 1986 WL 68636 (S.S.A.1986), *superseded in irrelevant part by* SSR 91–7c, Supplemental Security Income—Disability Standards for Children, 1991 WL 231791 (S.S.A. Aug. 1, 1991), similarly states that "[w]ork experience is relevant when it was performed within the pertinent 15–year period, lasted long enough for the individual to learn the job, *and consisted of SGA*." SSR 86–8, 1986 WL 68636, at *7 (emphasis added).

As to the meaning of substantial gainful activity, or SGA, SSR 82–62 states that

[t]he adjudicative criteria for determining whether a person has done "substantial" and "gainful" work activity are explained in sections 404.1571–404.1575 and 416.971–416.975 of the regulations.

SSR 82–62, 1982 WL 31386, at *2. The regulations to which SSR 82–62 refers state, *inter alia*, that work is to be considered "substantial" if it "involves doing significant physical or mental activities," 20 C.F.R. § 416.972(a), and is to be considered "gainful" if it is "the kind of work usually done for pay or profit, whether or not a profit is realized," *id.* § 416.972(b). The regulations state that the SSA "use[s] several guides to decide whether the work [the claimant has] done shows that [she is] able to do substantial gainful activity," including the provenance of the claimant's "earnings." 20 C.F.R. § 416.974(a). In this connection, the SSA indicates that neither poorly performed work nor minimally valuable make-work is to be considered substantial gainful activity:

*We consider how well you do your work when we determine whether or not you are doing substantial gainful activity. . . . If you are doing work that involves minimal duties that make little or no demands on you and that are of little or no use to your employer, . . . this does not show that you are working at the substantial gainful activity level.*

20 C.F.R. § 416.973(b) (emphases added). Thus, although stating the caveat that insubstantiality of earnings does not necessarily indicate that the claimant is not able to do substantial gainful activity, the SSA states, "[w]e do not consider any income not directly related to your productivity when we decide whether you have done substantial gainful activity." *Id.* § 416.974(a)(2) (emphasis added). As an example, that regulation states that "[i]f your earnings are being subsidized, the amount of the subsidy is not counted when we determine whether or not your work is substantial gainful activity," and if the "*employer does not set the amount of the subsidy or does not adequately explain how the subsidy was figured, we will investigate to see how much your work is worth.*" *Id.* (emphasis added).

The assessment ability [*sic*] to engage in SGA involves the evaluation of such factors as the functional capacity to perform the physical or mental exertion of work and to sustain work at a level which meets the standards of SGA on a regular and continuing basis. In all such cases where a determination or decision regarding disability is to be made, the evidence must be sufficient to permit a comparison between the claimant's capabilities and limitations and the requirements of relevant occupations.

SSR 86–8, 1986 WL 68636, at *8.

■ In sum, as we read the above SSRs and regulations, step four of the sequential process requires an inquiry into the claimant's ability to do her "past relevant work"; a claimant's past work experience, especially part-time work, is not "relevant"

unless, *inter alia*, it was "substantial gainful activity"; and a proper assessment of whether past work was substantial gainful activity requires evaluation of, *inter alia*, how well the claimant performed her duties, whether those duties were minimal and made little or no demand on her, what her work was worth to the employer, and whether her income was tied to her productivity.

## C. *The Decision as to the Relevance of Melville's Workfare*

■ We see no indication in the present record that the Commissioner made any evaluation as to whether Melville's prior part-time work experience was relevant within the meaning of the regulatory scheme. Nor, given the transcript excerpts quoted in Part I above, do we see any indication that the ALJ fulfilled his responsibility to develop the record on this issue. Although the ALJ asked Melville if she was currently on welfare, he did not appear to recognize that the prior work to which she referred was workfare, rather than a paid position. For example, when Melville stated that in her seven years of work she had been "working for Welfare," the ALJ inquired, "You mean the Department of Social Services?" (Tr. 8.) That question strongly suggests that the ALJ interpreted "working for Welfare" as meaning that Melville was simply an employee of the local agency that administered the welfare system. Similarly, in exploring the nature of her activities at DSS, the ALJ asked Melville such questions as "what did you do as a clerk for the five years for Welfare?" (*id.*); whether that work was "five years at the same place?" (Tr. 9); "what happened to that job?" (Tr. 11.); whether she had been "let ... go" from that job (*id.*); and "Have you looked for other work?" (Tr. 12.) These questions did not indicate an understanding that Melville was not an ordinary paid employee.

Although the ALJ questioned Melville as to her physical ability to sit, stand, or walk in the course of her activity at DSS, he asked no questions directed to Melville's occupational ability to perform the normal work of a paid clerk. Nor did he manifest any interest in such questions as whether Melville's duties were minimal from the employer's standpoint, and whether her welfare benefits were conditioned on her productivity as a clerk. Without developing the record along these lines, the ALJ could not properly assess whether Melville's workfare assignment could be considered substantial gainful work; if it could not, Melville's performance of that assignment did not, according to SSA regulations, constitute past relevant work.

Nor did the ALJ's written decision suggest any awareness that the nature of Melville's DSS activity was workfare. He explored only her physical capacity to engage in sedentary work. Rather, referring to the DSS position as "her past relevant work as a clerk," the ALJ stated that Melville had been "employed in this capacity." ALJ Decision at 2–3. He referred to the DSS activity as her "occupation." *Id.* at 3.

We conclude that the ALJ did not make the evaluation that was required by the regulatory scheme. The Commissioner does not appear to have given any greater thought than did the ALJ to the fact that Melville's past assignment at DSS was workfare or to such questions as whether her duties were *de minimis* and whether her entitlement to a welfare check depended on her productivity. The Appeals Council simply adopted the decision of the ALJ, and that became the final decision of the Commissioner. Although the district court itself reached at least an implicit conclusion on those questions, it is not within the proper scope of review for a court to address those questions in the first instance or *de novo*, and it would be inappropriate for us to uphold the Commissioner's decision on a basis that the record indicates did not receive proper administrative consideration.

## CONCLUSION

We have considered all of the parties' contentions in support of their respective positions and, except as indicated above, have found them to be without merit. The judgment of the district court is vacated, and the matter is remanded to the Commissioner for further proceedings not inconsistent with this opinion.