Ismael COTTO, Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY, Defendant.

No. 00–CV–6468L.

United States District Court, W.D. New York.

July 16, 2002.

**168**

Ismael Cotto, Rochester, NY, Pro se.

Christopher M. Mesh, Connors & Ferris, LLP, Rochester, NY, for Plaintiff.

Christopher V. Taffe, United States Attorney Office, Rochester, NY, Defendant.

1. "T.____" refers to the page of the administrative record filed by the Commissioner with her Answer.

## DECISION AND ORDER

LARIMER, Chief Judge.

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff, Ismael Cotto, is not disabled under the Social Security Act ("the Act") and, therefore, is not entitled to benefits. As discussed below, the Commissioner's decision is affirmed, and the complaint is dismissed.

## BACKGROUND

Plaintiff initially filed an application for Social Security disability insurance on May 6, 1996. (T. 98–101)[1] This application was denied. Plaintiff later filed a new application for benefits on December 11, 1996, alleging an onset-of-disability date of September 18, 1995. (T. 105–107) This application was also denied. (T. 76–78, 80–82) Following plaintiff's request for a hearing, he appeared before an administrative law judge ("ALJ") on September 15, 1998. (T. 30) A supplemental hearing was held on January 12, 1999, to obtain testimony from a vocational expert. (T. 51)

In determining whether plaintiff was entitled to receive disability benefits, the ALJ proceeded through the required five-step inquiry. *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir.1999), 20 C.F.R. § 404.1520. At the first step of this inquiry, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 18, 1995. (T. 21) Next, the ALJ found that plaintiff suffered from "severe cervical disc disease and a history of myocardial infarction," severe impairments that significantly limited his ability to do basic work activities.[2] *Id.; see Teja-*

2. Plaintiff also complained of burning pain in his feet, which the ALJ found was not a severe impairment. In his submission to this Court, plaintiff does not challenge this finding by the ALJ.

*da,* 167 F.3d at 774. The ALJ then found that these impairments did not met or equal the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* The ALJ proceeded to the fourth step and determined that plaintiff did not have the residual functional capacity ("RFC") to return to his past relevant work. *Id.; Tejada,* 167 F.3d at 774. At the fifth and final stage of this process, the burden shifts to the Commissioner to show "whether there is other work which the claimant could perform." *Tejada,* 167 F.3d at 774. Relying on the testimony of a vocational expert, the ALJ determined that there were a "significant number of jobs" that plaintiff could perform. (T. 22) Thus, the ALJ found that plaintiff was not disabled under the Act.

This decision became the final decision of the Commissioner on July 31, 2000, when the Appeals Council denied plaintiff's request for review. (T. 7–8) Plaintiff then commenced this action. The Commissioner and plaintiff both now move for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c).

## DISCUSSION

The Commissioner's decision that plaintiff was ineligible to receive benefits must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842(1971)(quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Thus, "[i]t is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999).

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Specifically, plaintiff argues that the ALJ did not give proper weight to the opinion of plaintiff's neurosurgeon, Dr. Thomas Rodenhouse, improperly assessed plaintiff's RFC, and relied on the opinions of non-examining physicians.

### A. Plaintiff's History and the Opinions of Plaintiff's Treating Physicians

Plaintiff, who was 43 years old at the time of the hearing, was last employed performing assembly line work. In February of 1995, plaintiff underwent surgery to treat cervical spondylosis. Initially, plaintiff reported some improvement to his primary care physician, Dr. Diane Spagnoli. His neurosurgeon, Dr. Thomas Rodenhouse, reported one month after the surgery that plaintiff had "improved considerably." Although plaintiff reported some pain, this pain did not interfere with his ability to work. (T. 290, 288). Despite these gains, by December 1995, plaintiff reported "excruciating" pain to Dr. Spagnoli. (T. 284)

Plaintiff continued to see his neurosurgeon, Dr. Rodenhouse, who reported in May 1995 that plaintiff was returning to full-time work. (T. 320) By September, Dr. Rodenhouse noted that plaintiff was experiencing "recurrent pain" and that he was no longer able to continuing working. (T. 319) Plaintiff reported improvement in his symptoms after he ceased working. (T. 318) At some point, plaintiff began receiving disability benefits through his employer and workers compensation benefits.

In February of 1996, Dr. Rodenhouse noted that plaintiff's previous work, which required "sitting for prolonged periods with his neck in the flexed position" aggravated his condition. (T. 315) He re-

ported that plaintiff was working with his employer's "vocational rehab service," and was seeking another position. Dr. Rodenhouse recommended that plaintiff "avoid any heavy lifting and also avoid excessive prolonged overhead activity or prolonged flexion of his neck." He described these restrictions as "most likely permanent." Later that month, Dr. Rodenhouse allowed plaintiff to return to work with a 30 pound weight restriction. (T. 314, 320)

In April of 1996, plaintiff reported that his employer would not allow him to return to work because of "persistent discomfort." (T. 313) Dr. Rodenhouse noted that based on plaintiff's history, there was "a causal relationship between his persistent pain and disability and his work. He is totally disabled at this time from his customary type of employment and we expect that this will be permanent." (T. 313) On June 4, 1996, Dr. Rodenhouse again opined that plaintiff was "totally disabled from his customary work." (T. 259) He described his gait as steady, with no weakness or myelopathy noted. *Id.*

By October of 1996, plaintiff complained to Dr. Rodenhouse of some numbness in his legs and described his neck pain as "not severe." (T. 312) The next month, Dr. Rodenhouse noted that plaintiff was still experiencing neck pain, and that he "remains totally disability [sic] vis-à-vis his cervical spondylosis." (T. 311)

Plaintiff was "not significantly better" by January 1997, and was still reporting stiffness in his neck and some arm pain. Dr. Rodenhouse advised plaintiff "to continue increasing his activities as symptoms permit." (T. 310) In a letter that appears to be related to plaintiff's workers compensation coverage, Dr. Rodenhouse noted that "[t]here is a causal relationship between his work and his degenerative spondylosis of the cervical spine and spinal stenosis. He remains totally disabled at this time." (T. 309)

Plaintiff continued to see Dr. Rodenhouse, who reported in July 1997 that plaintiff was still bothered by discomfort, and that plaintiff was not "a candidate . . . for any further surgical attack." (T. 306)

In October of 1997, plaintiff suffered a myocardial infarction. (T. 329–300) According to his primary care physician, Dr. Spagnoli, plaintiff "required no cardiovascular intervention" and "recovered nicely." (T. 379) Dr. Spagnoli suggested that plaintiff's only limitation as a result of the infarction was a lifting restriction of no more than 30 pounds. *Id.*

On March 22, 1998, Dr. Rodenhouse reported that plaintiff had "some mild cervical discomfort but it is not too severe or disabling." (T. 345) Plaintiff was instructed to "continue modifying his activities as symptoms dictate." *Id.* Two months later, Dr. Rodenhouse reported to Dr. Spagnoli that plaintiff had attempted to return to light duty work but was unable to tolerate it. (T. 346) He opined that "[b]ased on the fact that he does have persistent pain, that he tried work before and couldn't tolerate it, I think we have testimony to the fact that he is totally disabled at this time. We do expect that this will be permanent." *Id*

Plaintiff argues that the ALJ erred in failing to give controlling weight to Dr. Rodenhouse's opinion. Presumably, plaintiff is referring to Dr. Rodenhouse's several proclamations that plaintiff is disabled.

■ It has long been established that "[t]he medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater,* 221 F.3d 126, 134 (2d Cir.2000); *see* 20 C.F.R. § 404.1527(d)(2). Here, however, the ALJ specifically noted that Dr. Rodenhouse's opinion that plaintiff was disabled was based on his inability to return to light duty work and his inability to continue his

past employment. (T. 19) The record supports the ALJ's interpretation of Dr. Rodenhouse's opinions.

Although Dr. Rodenhouse declared plaintiff to be "disabled," he repeatedly referenced plaintiff's inability to perform only his past work. Twice Dr. Rodenhouse noted that plaintiff was unable to perform his "customary" type of work. (T. 259, 313) In his letter to Dr. Spagnoli, Dr. Rodenhouse again referenced plaintiff's inability to perform light work. It is notable that this letter was written two months after Dr. Rodenhouse had previously described plaintiff's condition as not disabling. (T. 345–46)

■ The ultimate question of disability is reserved to the Commissioner. 20 C.F.R. § 404.1527(e). As such, the Commissioner is not required to simply adopt a physician's statement that a claimant is disabled. This is especially true here, where the treating physician has limited his opinion to the plaintiff's ability to perform his past work or light work. Moreover, the Commissioner in effect agreed with Dr. Rodenhouse's finding, holding that plaintiff was, in fact, unable to perform his past work. The ALJ then continued with the required five-step analysis and determined that plaintiff possessed the RFC to perform other types of work.[3]

## B. The ALJ's Assessment of Plaintiff's RFC

Plaintiff also takes issue with the ALJ's assessment of plaintiff's RFC. The ALJ found that plaintiff was able to lift and carry 30 pounds occasionally and 10 pounds frequently. She determined that plaintiff's overhead activity was limited to occasionally (no more than 1/3 of the day) and that his neck flexion (tilting the head down or forward) was likewise limited.

The ALJ then posed two hypothetical situations to the vocational expert. One hypothetical included limits on lifting and carrying 20 pounds occasionally and 10 pounds frequently, while the other included carrying 30 pounds occasionally and 10 pounds frequently. Both included the limits on neck flexion described above. The vocational expert listed two potential jobs that plaintiff could perform under either hypothetical: surveillance-system monitor and cashier. See Dictionary of Occupational Titles, 379.367–010 & 211.462–010.

Plaintiff contends that the ALJ's RFC finding conflicts with the ALJ's determination that plaintiff could not perform his past work—which required less lifting than she found him capable of performing. Although one of plaintiff's past jobs, that of production line assembler, is classified as "light work" and requires exerting 20 pounds of force occasionally and 10 pounds of force frequently, see Dictionary of Occupational Titles, 714.684–101, the ALJ's assessment of RFC encompassed more than just an assessment of plaintiff's lifting ability. Specifically, the ALJ considered the amount of neck flexion that each position entailed. The vocational expert likewise concluded that although plaintiff could not perform his past work with these restrictions, there were, in fact, other jobs that plaintiff was capable of performing.

■ Plaintiff suggests that the ALJ gave improper weight to the RFC assessments submitted by two separate nonexamining physicians. The ALJ stated that the opinions of the nonexamining reviewing physicians, "although consistent with the final determination reached herein," were "not given as much weight as the clinical evidence and opinions of examining and treating physicians." (T. 21) The rec-

---

3. Although the record indicates that the ALJ sent a form to Dr. Rodenhouse requesting information concerning plaintiff's RFC, this form was never completed. (T. 336–342)

ord suggests that the ALJ in fact determined plaintiff's limitations based on the opinions of his treating physicians. For example, both Dr. Rodenhouse and Dr. Spagnoli suggested that plaintiff could not lift more than 30 pounds. (T. 311, 379) Dr. Rodenhouse also suggested that plaintiff should avoid overhead lifting and prolonged flexion of the neck. (T. 315) Even if the ALJ did rely in part on the assessments performed by nonexamining physicians, such evidence is considered legitimate opinion evidence. 20 C.F.R. § 404.1527(f). Thus, the ALJ's assessment of plaintiff's RFC and her determination that plaintiff is capable of performing certain jobs which exist in the national economy is supported by substantial evidence.[4]

### C. Plaintiff's Previous Application for Disability Benefits

Plaintiff's first application for benefits, filed on May 6, 1996, alleged an earlier onset-of-disability date of October 18, 1994. (T. 98–101) Plaintiff claims that the ALJ erred in refusing to reopen this application. Even if this Court had jurisdiction to review the ALJ's declination to reopen plaintiff's previous application, her refusal has little practical effect in light of this Court's decision affirming the ALJ's finding that plaintiff is not disabled. *See Figueroa v. Apfel*, 2000 WL 278073, at *4

4. Plaintiff's arguments that the ALJ improperly discredited plaintiff's statements concerning the disabling nature of his condition, that the ALJ failed to properly develop the record, and that the ALJ impermissibly relied on the medical vocational guidelines are likewise without merit. Moreover, in making these arguments plaintiff has clearly misstated the record. For example, plaintiff suggests that the ALJ should have recontacted Dr. Rodenhouse concerning plaintiff's overall level of disability. However, the ALJ did, in fact, contact Dr. Rodenhouse, requesting additional medical records and an assessment of plaintiff's RFC. Although the medical records were transmitted, the RFC form was never completed. (T. 336–342) Finally, a thorough

(S.D.N.Y. March 14, 2000)(noting that the Act "cannot be read to authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits" absent a constitutional challenge)(quoting *Califano v. Sanders*, 430 U.S. 99, 107–108, 97 S.Ct. 980, 51 L.Ed.2d 192(1977)).

### CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is granted. Plaintiff's motion for judgment on the pleadings (Dkt. Nos. 9,17) is denied, and the complaint is dismissed.

IT IS SO ORDERED.

reading of the ALJ's opinion indicates that she did *not* rely on the guidelines in determining that plaintiff was not disabled. Rather, the ALJ found that *if* plaintiff could perform the full range of light work, the guidelines would dictate a finding of not disabled. She then went on to note that "[i]t is clear from the responses of the vocational expert that even considering his nonexertional restrictions, his ability to perform light work would not be compromised to the point that there would not be a significant number of jobs in the economy he could perform on a sustained basis." (T. 20)