Geraldine F. CLAPP, Plaintiff,

v.

Joanne B. BARNHART, Commissioner of Social Security[1], Defendant.

No. 01–CV–6284L.

United States District Court, W.D. New York.

July 29, 2002.

---

1. Plaintiff's complaint names former acting Commissioner of Social Security Larry G.

Massanari. Joanne B. Barnhart, the current

Kenneth F. Laritz, Clinton Township, MI, for Plaintiff.

Brian M. McCarthy, Asst. U.S. Atty., United States Attorney, Rochester, NY, for Defendant.

*DECISION AND ORDER*

LARIMER, Chief Judge.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that Geraldine F. Clapp ("plaintiff") is not disabled under the Social Security Act, and therefore, is not entitled to Social Security disability insurance ("SSDI") benefits. As discussed below, the Commissioner's decision is affirmed, and this action is dismissed.

## FACTUAL BACKGROUND

Geraldine F. Clapp was born on October 13, 1939. (Tr. 73.)[2] Her previous work experience includes work as a manager of operations in the finance business. (Tr. 30, 85.) This work required her to sit seventy-five percent of the day, and stand or walk the remaining twenty-five percent. (Tr. 30–31.) She was also required to carry files that weighed up to ten pounds. (*Id.*) She applied for SSDI benefits on December 30, 1998, alleging that her thyroid dysfunction, Grave's Disease and diabetes became disabling on July 1, 1987. (Tr. 73–76.) Her application was denied initially and on reconsideration. (Tr. 56–59, 62–64.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on October 23, 2000. (Tr. 26–55.) The ALJ decided that plaintiff was not entitled to benefits and denied her claim. (Tr. 11–15.)

Commissioner, is automatically substituted as defendant pursuant to Fed.R.Civ.P. 25(d)(1).

2. "Tr.___" refers to the page of the transcript of the Administrative Record filed by the Commissioner with her Answer.

The ALJ's decision became the Commissioner's final decision on April 6, 2001, when the Appeals Council denied plaintiff's request for review. (Tr. 3–5.) Plaintiff commenced this action on June 4, 2001, seeking review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

In order to qualify for SSDI benefits, the plaintiff must have been disabled on or before the date her insured status expired. 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1); 20 C.F.R. §§ 404.130, 404.131(b), 404.315(a). It is undisputed that plaintiff's insured status expired on December 31, 1994. (Tr. 11, 82–84.)

*Appropriate Legal Standards*

The Commissioner's decision that plaintiff was ineligible to receive SSDI benefits must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g); *see also Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Thus, "[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *See Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999). Therefore, the Court must determine whether the ALJ adhered to the appropriate legal standards, and whether his determination that plaintiff was not disabled prior to the expiration of her insured status is supported by substantial evidence.

In determining whether plaintiff was entitled to receive disability benefits, the ALJ proceeded through the required five-step inquiry. *See Tejada v. Apfel,* 167 F.3d 770, 774 (2d. Cir.1999) (discussing the five-step process delineated in the relevant regulations); 20 C.F.R. § 416.920. At the first step of this inquiry, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 1, 1987. (Tr. 14.) Next, the ALJ found that plaintiff suffered from multiple severe impairments: thyroid dysfunction, Grave's Disease and diabetes. (*Id.*) The ALJ then found that these impairments did not meet or equal the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.*) The ALJ proceeded to the fourth step and determined that plaintiff had the residual functional capacity ("RFC") to perform her past work, classified as sedentary, during the insured period. (*Id.*) He found that her complaints of weakness and fatigue did not prevent her from engaging in her past relevant work. (*Id.*) As such, the ALJ found that plaintiff was not disabled from July 1, 1987 through December 31, 1994. I find that the ALJ applied the appropriate legal standards in determining the plaintiff's disability status. The only question remaining before the Court is whether the ALJ's decision is supported by substantial evidence.

*Support for ALJ's Determination*

The ALJ's determination that plaintiff was able to engage in her past relevant work is supported by substantial evidence from several medical sources. Also, I believe that the ALJ gave appropriate weight to the opinions of plaintiff's two treating physicians, Howard D. Kolodny, M.D. and Lawrence S. Kryle, M.D.

Dr. Kryle, a treating physician since 1982 (Tr. 234), determined in August, 1999 that plaintiff was incapable of sedentary work, and noted that a "[c]ombination of [patient's] disabilities have and continue to prevent her from sustaining work activities." (Tr. 236.) However, it is clear from a letter attached to this evaluation (Tr. 234–235) that Dr. Kryle included in his

assessment the effects of a stroke that plaintiff suffered in 1995—after plaintiff's insured status had expired. While he did suggest that plaintiff's diabetes may have been one of the causes of her stroke, he did not indicate that her diabetes or any other condition was disabling prior to December 31, 1994. Dr. Kryle referred plaintiff to Edward Weiland, M.D. for neurological consultation in 1991, who characterized plaintiff's paresthesia[3] as "subacute." (Tr. 210–211.)

Dr. Kolodny, who had treated plaintiff since 1989 (Tr. 112), found that in August 1999 plaintiff could perform sedentary work. (Tr. 117). Interestingly, this assessment also included a consideration of plaintiff's 1995 stroke. In spite of the stroke, Dr. Kolodny still found that plaintiff was capable of sedentary work, thus suggesting, *a fortiori*, that she was capable of such work prior to her 1995 stroke. Finally, Dr. Kolodny's note indicated that plaintiff's diabetes was under "good long term control" in 1992 and 1993. (Tr. 201–203.)

James R. Hurley, M.D. who also examined plaintiff on multiple occasions between 1988 and 1990, characterized plaintiff as "clinically euthyroid"[4] with thyroid functions within normal limits. (Tr. 206–209.)

Finally, Osvaldo Fulco, M.D., a medical expert who reviewed plaintiff's medical records and provided testimony at plaintiff's hearing (Tr. 49–54), determined that plaintiff was not restricted from sedentary work between 1987 and 1994. (Tr. 52–53.) He also determined that plaintiff's hyperthyroidism would have caused significant fatigue and that her condition would have restricted her ability to stand and walk, but not to sit. He opined that plaintiff could work sitting six out of eight hours a day. (*Id.*)

■ The ALJ's decision is supported by substantial evidence on the record. With the exception of Dr. Kryle's opinion (which included consideration of plaintiff's stroke), all medical evidence of record supports the ALJ's finding of no disability during the insured period. Thus, the ALJ's failure to expressly discuss the opinions of the treating physicians which are not contrary to his finding of no disability does not warrant reversal of the Commissioner's decision.

Moreover, plaintiff's own testimony at the administrative hearing does not lend support to her claim. At the hearing, she indicated that during the insured period she did not have a problem sitting (Tr. 37), attending to insurance paperwork and administering her husband's estate (Tr. 41). Plaintiff also testified that she went on job interviews for "less strenuous" employment (Tr. 42) during the insured period. Finally, during this period, she took care of her ailing husband and parents with the help of others. (Tr. 40–41.) This testimony demonstrates a level of activity greater than what plaintiff alleged in her complaint, and supports the ALJ's conclusion that plaintiff possessed the necessary capacity during her insured period to perform her past relevant work.

The ALJ's findings are supported by substantial evidence. As such, they must be affirmed.

## CONCLUSION

Plaintiff's motion for summary judgment (Dkt.# 9) is denied. The Commissioner's

---

**3.** An abnormal sensation, such as of burning, pricking, tickling or tingling. *Stedman's Medical Dictionary,* 1031 (5th ed.1982).

**4.** "Euthyroid" is a term used to describe a thyroid gland that is functioning normally, with its secretion being of proper amount and constitution. *Stedman's Medical Dictionary,* 495 (5th ed.1982).

motion for judgment on the pleadings (Dkt.# 11), is granted, and the complaint is dismissed.

IT IS SO ORDERED.