**Virginia FIORELLO, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 318, Docket 83–6156.

United States Court of Appeals, Second Circuit.

Argued Oct. 19, 1983.

Decided Dec. 27, 1983.

Morris Rubin, New York City (Marc L. Ames, New York City, Atty. of record, on brief), for plaintiff-appellant.

Thomas A. McFarland, New York City (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Robert L. Begleiter and Thomas B. Roberts, Asst. U.S. Attys., Brooklyn, N.Y., of counsel), for defendant-appellee.

Before FRIENDLY, VAN GRAAFEILAND and MESKILL, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Virginia Fiorello appeals from a judgment of the United States District Court for the Eastern District of New York (Platt, J.) affirming a decision of the Secre-

tary of Health and Human Services which had denied appellant's claim of continuing disability under section 223 of the Social Security Act as amended, 42 U.S.C. § 423.

Mrs. Fiorello, who is now thirty-nine years old, worked as a secretary from 1962 until she was involved in an automobile accident in November 1976. As a result of the accident, she suffered a fracture and dislocation of her right hip, torn ligaments in her right ankle, contusions of her sternum and chest, injury to her right sciatic nerve, and a severe concussion. These injuries necessitated hospitalization and surgery and left Mrs. Fiorello with a number of physical and mental problems.

In May 1977, Mrs. Fiorello was granted disability benefits which were continued until 1979, when the Bureau of Disability Determinations determined that she no longer was disabled. When appellant was denied reconsideration of this determination, she requested and was granted an administrative hearing. The Administrative Law Judge who conducted the hearing found that appellant could perform the sedentary work of a secretary and that her disability entitlement correctly had been terminated as of July 30, 1979. The Appeals Council denied Mrs. Fiorello's request for review, and the district court held that the Secretary's decision was supported by substantial evidence. We reverse.

Dr. Justus Kaufman, an orthopedist, was the only physician to testify at the hearing before the ALJ. He described in detail the dislocation of appellant's right hip, her fractured acetabulum, and the damage to her ligaments and sciatic nerve, "the most important nerve in the leg." He described an increasing avascular necrosis in the femur head which, he said, would require prosthetic surgery. He also explained how, in favoring her hip injury, appellant had aggravated a pre-existing spinal scoliosis, causing painful arthritis to develop in one or more lumbar vertebrae. He explained that, as a result of brain damage, appellant had weakness in her right side; that severe ligamental tears in her right ankle had left her with limited dorsiflexion, abnormal inversion of the right foot, swelling, and discomfort; and that appellant still had discomfort associated with her chest injury. He testified that she was unable to engage in substantial work activity on a competitive basis.

By picking and choosing excerpts from the reports of other physicians, the ALJ reached the opposite conclusion. For example, the ALJ relied on a report of Dr. Lawrence Kaplan, which was dated May 7, 1979 but covered his examination of appellant on March 26, 1979, and in which he stated that, although appellant's prognosis was guarded, "rehabilitation-wise, she probably has the residual functional capacity for some type of sedentary work where she does not have to lift up too much weight due to the pressure put on her right leg." The ALJ then "question[ed] the validity" of a subsequent report by Dr. Kaplan, dated May 25, 1979, in which Dr. Kaplan said:

> Although I thought that she might be able to do sedentary work, it is quite apparent to me as of the last examination on May 24, 1979 that the patient has a continuous occupational disability and will be unable to work indefinitely.

The ALJ gave as her reason for rejecting Dr. Kaplan's later report that the doctor "[found] himself able to reverse his evaluation over an 18 day span of time." The ALJ's appraisal of Dr. Kaplan's veracity was based solely on the doctor's written reports. We have read the reports, and we find no basis for the ALJ's rejection of the later report. This report covered a re-examination of appellant which occurred, not eighteen days, but two months after the examination previously reported.

The record contains four letters from Dr. George Truchly, appellant's orthopedic surgeon, which reported as follows:

August 30, 1977—"still considered disabled."

April 20, 1978—"aseptic necrosis of the right hip . . . totally disabled."

April 26, 1979—"certainly is not fully employable."

January 8, 1981—"aseptic necrosis."

Although Dr. Truchly stated from first to last that appellant was disabled, the ALJ rejected all of these conclusions by focusing on an admittedly erroneous statement in Dr. Truchly's April 26, 1979 report that

appellant's x-rays showed no evidence of aseptic necrosis.

Dr. Albert Accetola, another treating physician, reported on September 29, 1979, that appellant bleeds easily when injured or bumped, that the sensation in her right leg is diminished, that motion in her right hip is limited and painful, that she cannot sit for long periods of time, that she must move frequently or her leg stiffens, and that changes in temperature or humidity "exacerbate her pain".

Dr. Emile Naclerio, a thoracic surgeon who also treated appellant, reported on September 27, 1979, that appellant "cannot work because of disability—severe chest wall pain and shortness of breath."

Dr. Melvin Shulman, a psychiatrist, reported on December 28, 1979, that appellant was totally disabled from doing any type of gainful work in the foreseeable future. The ALJ, after stating that Dr. Shulman found appellant to be fully disabled by her psychiatric condition and that his diagnosis was "anxiety neurosis, chronic, severe and totally disabling", reached the somewhat remarkable lay conclusion that appellant was not "psychiatrically impaired".

On an appeal such as this, we must determine if the decision of the Secretary is supported by substantial evidence on the record as a whole. *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983). Substantial evidence is more than a mere scintilla; it is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The ALJ's decision was not merely without substantial support in the record; it was contrary to the reasoned conclusion of every doctor whose opinion was solicited. Indeed, counsel for the Secretary conceded at oral argument that not a single doctor had concluded that appellant was able to work.

The expert opinions of all these physicians, particularly the treating physicians, should not have been rejected summarily by the ALJ. *Aubeuf v. Schweiker,* 649 F.2d 107, 112 (2d Cir.1981); *McLaughlin v. Secre-*

*tary of HEW,* 612 F.2d 701, 705 (2d Cir. 1980). Although we do not require that, in rejecting a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony, *Miles v. Harris,* 645 F.2d 122, 124 (2d Cir.1981), we cannot accept an unreasoned rejection of all the medical evidence in a claimant's favor, *see SEC v. Chenery Corp.,* 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943). The ALJ's finding that Mrs. Fiorello was not disabled as of July 30, 1979, is without substantial evidentiary support.

We reverse the judgment of the district court with instructions to remand to the Secretary for a computation of benefits due and owing Mrs. Fiorello for the period between July 30, 1979 and July 30, 1980, the date of the ALJ's decision.