Luz MARTINEZ, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant.

No. 86 Civ. 2986 (JMC).

United States District Court, S.D. New York.

April 12, 1988.

Anthony V. Alfieri, The Legal Aid Soc., Bronx, N.Y., for Luz Martinez.

Diogenes P. Kekatos, Sp. Asst. U.S. Atty., New York City, for U.S.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Plaintiff's motion for judgment on the pleadings is denied. Defendant's motion for judgment on the pleadings is granted.

The complaint is dismissed. Fed.R.Civ.P. 12(c).

## BACKGROUND

Plaintiff Luz Martinez brings this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, as amended ["the Act"], 42 U.S.C. §§ 405(g) and 1383(c)(3). She seeks reversal of a final determination by the Secretary of Health and Human Services [the "Secretary"], denying her disability insurance benefits and Supplemental Security Income ["SSI"] benefits. Martinez first applied for disability insurance benefits on June 7, 1984. On July 26, 1984, she filed an application for SSI benefits. Both applications were denied. Martinez then requested a hearing to have her claims reviewed. The hearing was held on February 14, 1985, before Administrative Law Judge Roy P. Lieberman [the "ALJ"]. The ALJ considered the case de novo and, on July 10, 1985, issued his decision denying Martinez benefits on the ground that she was not disabled within the meaning of the Act. The ALJ's decision became the Secretary's final determination on February 10, 1986, when the Department's Appeals Council denied Martinez's request for a review of the ALJ's decision.

## FACTS

Martinez is sixty-three years of age and was born in 1924 in the Dominican Republic. She arrived in the United States in 1966, but neither reads nor writes English. From 1966 until 1979, Martinez worked as a machine operator in a factory, manufacturing rhinestone beads. She operated the machine with a hand crank while seated. Martinez says that, although she had to work fast, the machine itself was not dangerous. Martinez currently lives with her son and his wife and subsists on welfare benefits.

Sometime in 1979, the exact date being uncertain, Martinez stopped working at the bead factory. On July 19, 1979, she was examined in the emergency room of the Columbia Presbyterian Medical Center, after complaining of polypuria (passing ex-

cessive urine), polydipsia (excessive thirst) and light-headedness. A diagnosis of diabetes mellitus was made. She was given insulin and started on a diet of 1600 calories per day. Martinez was subsequently prescribed Diabinese to control her condition. On August 23, 1979, an ophthalmological examination revealed no signs of diabetic retinopathy. Martinez was also diagnosed as having osteoarthritis.

On June 21, 1984, Martinez was examined by Dr. Peter Strassberg, a Social Security Administration ["SSA"] consulting physician. Dr. Strassberg's report confirmed an ongoing diagnosis of diabetes and osteoarthritis, with the following finding:

> [Martinez displayed] a decreased range of motion of the thoraco lumbar spine to 70 of flexion, associated with pain on motion. There is full straight leg raising bilaterally. There is no vertabral tenderness. There is no paravertebral spasm. There is a decreased range of motion of the right and left shoulders to 130 of abduction associated with pain on motion. There is a decreased range of motion of the right and left knees to 130 of flexion, associated with pain on motion. There is no crepitus. There is complete range of motion of all major joints, including the spine. Digital dexterity is normal. Patient is able to make a full fist without difficulty.

Record of Administrative Proceedings ["R."] at 108. On July 3, 1984, Dr. U. Weber, a SSA consulting physician, conducted a residual functional capacity assessment to evaluate Martinez's capacity to perform certain types of work. Weber concluded, without examining Martinez, that she had the capacity to stand, walk or sit for about six hours per day, with unlimited capacity to push and/or pull, and could lift up to 10 pounds frequently, with more limited lifting of up to 20 pounds. R. at 111.

On August 8, 1984, Dr. David Strassberg, another SSA consulting physician, examined Martinez. His report set forth a dignosis of diabetes, arthritis and hypertension. R. at 118–20. His findings were essentially the same as those of Dr. Peter Strassberg. On August 9, 1984, Dr. H. Rabiner, a third SSA consulting physician, took x-rays of Martinez's right and left shoulder areas. These showed a "transitional lumbosacral anomaly with partial sacralization of L5" and a "[n]arrowing at L5 S1." R. at 121. The x-ray examination of the right shoulder "in multiple projections reveal[ed] the bones to be of normal texture and density. There [was] no evidence of fracture, dislocation, or bony destruction. The soft tissues [were] unremarkable." R. at 122.

Also in August 1984, Martinez entered the Lincoln Medical and Mental Health Center. Her treating physician at this time was Dr. J. Gernsheimer. He also made a diagnosis of diabetes mellitus and osteoarthritis. Dr. Gernsheimer saw Martinez again in September, November and December of 1984.

## DISCUSSION

### A. General Principles

In order to recover disability insurance or SSI benefits, a claimant must establish that she is "disabled" within the meaning of the Act. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1520. A person is disabled when she is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

42 U.S.C. §§ 423(d)(1)(A); see 42 U.S.C. § 1382c(a)(3).

The Act further provides that an individual

> shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in

which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work....

42 U.S.C. § 423(d)(2)(A); see 42 U.S.C. § 1382c(a)(3)(B).

The Secretary has promulgated a five-step procedure to be used in the evaluation and adjudication of disability claims. The procedure has been summarized as follows:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider [her] disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the Secretary then determines whether there is other work which the claimant could perform.

Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir.1983) (quoting Berry v. Schweiker, 675 F.2d 464, 467 [2d Cir.1982]) (discussing 20 C.F.R. §§ 404.1520, 416.920).

"The burden of proving disability, encompassing the first four of these steps, is on the claimant." Rivera, 717 F.2d at 722. If the claimant "shows that [her] impairment renders [her] unable to perform [her] past work, the burden then shifts to the Secretary to show there is other gainful work in the national economy which the claimant could perform." Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 642 (2d Cir.1983).

The Second Circuit has held that:

In reaching a conclusion as to disability, both objective and subjective factors are to be considered. These include objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence of pain or disability testified to by the claimant or other witnesses, and the claimant's educational background, age, and work experience.

Parker v. Harris, 626 F.2d 225, 231 (2d Cir.1980); see Rivera, 717 F.2d at 723. The Act states that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); see 42 U.S.C. § 1383(c)(3) (SSI benefits); Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed. 2d 842 (1971); Havas v. Bowen, 804 F.2d 783, 785 (2d Cir.1986); Moore v. Secretary of Health and Human Services, 778 F.2d 127, 130 (2d Cir.1985); Donator v. Secretary of Health and Human Services, 721 F.2d 414, 418 (2d Cir.1983). The term substantial evidence means " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson, 402 U.S. at 401, 91 S.Ct. at 1427 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); see Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983); Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir.1983). The federal courts "would be derelict in [their] duties if [they] simply paid lip service to [the substantial evidence] rule, while shaping [their] holding[s] to conform to [their] own interpretation of the evidence." Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982), cert. denied, 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983).

B. *The ALJ's Conclusions*

The ALJ made the following findings: 1. The claimant met the special earnings requirements of the Act on January [3], 1980 the date she stated she became unable to work, and continued to meet them through June 30, 1983.

2. The claimant has not engaged in substantial gainful activity since January [3], 1980.

3. The medical evidence establishes that the complainant has diabetes mellitus controlled on medication, minimal osteoarthritis, and hypertension controlled on medication, but that she does not have an impairment or combination of impairments listed in or medical equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's testimony of subjective complaints is found to be inconsistent with the medical evidence, exaggerated, and not credible.

5. The claimant has the residual functional capacity to perform a full range of light and sedentary work activities.

6. The claimant's past relevant work as a machine operator fell within the above exertional levels.

7. The claimant's impairments do not prevent her from performing her past relevant work.

8. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

R. at 15–16. Martinez advances several arguments in support of her contention that the ALJ's decision should be reversed.

■ First, Martinez argues that the ALJ violated the Second Circuit's "treating physician rule." The rule provides that:

[A] treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is: i) binding on the fact-finder unless contradicted by substantial evidence; and ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians....

*Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir.1986).

Although Martinez argues, at great length, about the treating physician rule, over which there exists little controversy, she does not support adequately her contention that the ALJ violated the rule. The fact that the ALJ and the Appeals Council did not mention the rule by name is of no import, nor does it suggest that they are unfamiliar with the longstanding rule, or deliberately evaded its strictures. Instead, the ALJ recognized that Martinez suffers from diabetes mellitus, controllable with medication, as well as osteoarthritis and hypertension. These are the exact conclusions drawn by Dr. Gernsheimer, the treating physician.

Moreover, as Martinez concedes, *see* Memorandum of Law in Reply at 12–13, 86 Civ. 2986 (JMC) (July 2, 1987), the reports and diagnoses of the SSA consulting physicians are consistent with the findings of Dr. Gernsheimer. There is no substantial finding of Dr. Gernsheimer that was ignored by the ALJ. Martinez's diabetes is controlled by Diabinese and a special diet. There was no medical evidence that, despite this ongoing treatment, Martinez's diabetic condition is debilitating. With respect to Martinez's hypertension, no medical evidence suggested that it curtailed her ability to engage in meaningful activity to any appreciable degree. In fact, she was never prescribed medication for it. R. at 127.

Martinez's most serious ailment is her osteoarthritis. Here again, Martinez's pain is controlled to a degree by medication—for a time Motrin, but typically Tylenol. In fact, Dr. Gernsheimer reported on successive visits that Martinez's condition was "Good," R. at 148, that she "feels well," R. at 150, that she "feels better," R. at 151, that her osteoarthritis was "chronic" but without any "acute changes," *id.,* that she "feel[s] better," R. at 152, that she "feels O.K.," and was "[d]oing well," R. at 153, and that she "feels better," R. at 154. Nothing in the records of Dr. Gernsheimer indicates that Martinez was incapable of performing the light type of work she had been accustomed to some years earlier. Accordingly, because he did not ignore any finding of Dr. Gernsheimer in this regard, the ALJ did not violate the treating physician rule.

■ Martinez also contends that the ALJ analyzed her subjective complaints of pain

improperly. She argues that claimants "need only demonstrate that they are afflicted by a medically ascertainable impairment. Once that impairment is established, a claimant's testimony concerning her subjective pain and her 'symptoms of illness' are dispositive, ..." Plaintiff's Memorandum of Law at 42, 86 Civ. 2986 (JMC) (S.D.N.Y. April 17, 1987) (citations omitted). The Court agrees with the Government that the ALJ did not err in his evaluation and consideration of Martinez's subjective complaints of pain, given the objective medical evidence regarding disability.

Section 223(d)(5) of the Act, as recently amended by Section 3(a)(1) of Publ.L. No. 98–460, 98 Stat. 1794, 1799 (1984), provides as follows:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could *reasonably be expected to produce the pain or other symptoms alleged* and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability....

42 U.S.C. § 423(d)(5)(A) (emphasis added); *see* 42 U.S.C. § 1382c(a)(3)(H) (above standard applicable to SSI program).

The Court does not agree that the ALJ relied on his own impressions of Martinez during the administrative hearing as a substitute for the medical evidence before him. An ALJ may consider a claimant's demeanor in assessing her credibility, *see Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979); *Majias v. Social Security Administration,* 445 F.Supp. 741, 744 (S.D.N.Y.1978) (Weinfeld, J.). In *Marcus,* the court stated clearly that "the Secretary is not obliged to accept without question the credibility of [a claimant's] subjective evidence [of pain].... The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." 615 F.2d at 27 (citations omitted).

On the record before the Court, there is nothing which indicates that the ALJ acted improperly in this regard. Martinez's subjective complaints were found to have been contradictory to statements made by her to Dr. Gernsheimer, her treating physician, that she was feeling better at each visit. *See* R. at 150–54. Furthermore, the ALJ adequately considered Martinez's subjective complaints, discounted somewhat due to his finding regarding credibility, in the context of the objective medical evidence before him which, with a high degree of uniformity, suggested that Martinez suffered from controllable diabetes, hypertension, and mild osteoarthritis, also controllable with medication. Thus, the ALJ considered the correct factors, *see Rivera,* 717 F.2d at 723; *Parker,* 626 F.2d at 231, in rendering his determination regarding Martinez's claim of disability.

The Court has considered plaintiff's remaining arguments and, essentially for the reasons stated in the Government's Memorandum of Law at 30–34, 86 Civ. 2986 (JMC) (S.D.N.Y. May 27, 1987), finds them to be without merit. For all of the foregoing reasons, plaintiff's motion for judgment on the pleadings is denied and the defendant's motion for judgment on the pleadings is granted. Fed.R.Civ.P. 12(c).

## CONCLUSION

Plaintiff's motion for judgment on the pleadings is denied. Defendant's motion for judgment on the pleadings is granted. Fed.R.Civ.P. 12(c). The Clerk of the Court is directed to enter judgment for the defendant and to dismiss the complaint.

SO ORDERED.