Gary A. NILES, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security, Defendant.

No. 11–CV–146 (VEB).

United States District Court, N.D. New York.

Signed Sept. 29, 2012.

Howard D. Olinsky, Olinsky Law Group, Syracuse, NY, for Plaintiff.

Karen T. Callahan, Social Security Administration, New York, NY, for Defendant.

## DECISION AND ORDER

VICTOR E. BIANCHINI, United States Magistrate Judge.

## I. INTRODUCTION

In March of 2005, Plaintiff Gary A. Niles applied for disability insurance benefits under the Social Security Act. Plaintiff alleges that he has been unable to work since November of 2004 due to a spinal condition, depression, and anxiety. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through his attorney, Howard D. Olinsky, Esq., of counsel, commenced this action seeking judicial review of the unfavorable portion of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 24). The parties, by and through their respective counsel, consented to the jurisdiction of the undersigned on June 28, 2011. (Docket No. 25).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

On March 21, 2005, Plaintiff applied for disability insurance benefits, alleging that he had been unable to work since November 7, 2004. (T at 81–84, 151).[1] The application was denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held in Utica, New York, on Octo-

ber 17, 2006, before ALJ Robert Gale. Plaintiff appeared with an attorney and testified. (T at 746–70).

On January 22, 2007, ALJ Gale issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period and denying his claim for benefits. (T at 45–53). Plaintiff sought review by the Social Security Administration's Appeals Council, which granted that review and remanded the matter further development of the record on July 27, 2007. (T at 40–43). ALJ Gale presided over a second hearing on May 21, 2009. (T at 771–806). On October 1, 2009, the ALJ issued a second decision denying Plaintiff's claim for benefits. (T at 12–28). The ALJ's second decision became the Commissioner's final decision on December 8, 2010, when the Appeals Council denied Plaintiff's request for review. (T at 7–9).

Plaintiff, by and through his attorney, timely commenced this action by filing a Complaint on February 9, 2011. (Docket No. 1). The Commissioner interposed an Answer on August 15, 2011. (Docket No. 12). Plaintiff filed a supporting Brief on November 14, 2011. (Docket No. 20). The Commissioner filed a Brief in opposition on December 29, 2011. (Docket No. 21).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

---

1. Citations to "T" refer to the Administrative Transcript. (Docket No. 13).

2. General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat

the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons set forth below, Plaintiff's motion is granted, the Commissioner's motion is denied, and this case is remanded for further proceedings.

## III. DISCUSSION

### A. Legal Standard

■ A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir.1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).

■ "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982).

■ If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. *See* 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in *Bowen v. Yuckert*, 482 U.S. 137, 140–142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

**3.** This five-step process is detailed as follows: First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. *See Bowen*, 482 U.S. at 146 n. 5, 107 S.Ct. 2287; *Ferraris v. Heckler*, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B. Analysis

### 1. Commissioner's Decision

#### a. First ALJ Decision

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008, and had not engaged in substantial gainful activity since November 7, 2004, the alleged onset date. (T at 50). The ALJ concluded that Plaintiff had the following impairments considered severe under the Act: anxiety disorder and personality disorder. (T at 50). However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 51).

whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.
Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

After reviewing the medical evidence, the ALJ concluded that Plaintiff retained the residual functional capacity to perform the physical demands of work at any exertional level. He found that Plaintiff had the mental residual functional capacity to understand, remember, and carry out simple and some complex tasks, attend to a routine, learn new tasks with appropriate training, and work in a low stress environment. (T at 51). The ALJ determined that Plaintiff could perform his past relevant work as a truck driver. (T at 52). As such, the ALJ found that Plaintiff was not under a disability. (T at 53).

#### b. Appeals Council's Decision to Remand

Plaintiff sought review of the ALJ's first decision. Upon review, the Appeals Council found that the ALJ's decision (1) did not adequately address certain medical evidence, (2) contained inadequate findings with regard to the severity of Plaintiff's mental impairment, (3) did not give proper consideration to certain medical opinion evidence, and (4) did not adequately compare Plaintiff's RFC with the mental demands of his past relevant work. (T at 41–42). Accordingly, the Appeals Council remanded the matter to the ALJ with a direction to reconsider and further develop the record. (T at 42–43).

#### c. ALJ's Second Decision

On remand and following a second administrative hearing (which included testimony from a vocational expert), the ALJ made the same findings with respect to Plaintiff's lack of substantial gainful activity and date last insured. (T at 21). The

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

ALJ added degenerative arthritis of the lumbar spine and anxiety disorder as severe impairments. The ALJ found a more restricted residual functional capacity ("RFC"), concluding that Plaintiff could lift/carry 10 pounds frequently, stand/walk for 2 hours in an 8–hour workday, and sit for 6 hours in an 8–hour workday. (T at 21). With regard to mental RFC, the ALJ found that Plaintiff could understand, remember, and perform routine, unskilled tasks with only occasional decision-making. (T at 22). He further determined that Plaintiff could learn new unskilled tasks, attend to a routine, and work in a low stress environment. (T at 22).

Upon reconsideration, the ALJ found that Plaintiff was unable to perform any past relevant work. However, considering Plaintiff's age (43 years old on the date last insured), education (GED), work experience (some skills), and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (T at 26). As such, the ALJ concluded that Plaintiff had not been under a disability from November 7, 2004 (the alleged onset date) through December 31, 2008 (the date last insured). (T at 27).

As noted above, the ALJ's second decision became the Commissioner's final decision on December 8, 2010, when the Appeals Council denied Plaintiff's request for review. (T at 7–9).

### 2. Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed. He offers five (5) principal arguments in support of his position. First, Plaintiff argues that the ALJ should have concluded that his insomnia and obesity were severe impairments. Second, Plaintiff contends that the ALJ should have found that his impairments met or medically equaled § 1.04A of the Listings. Third, Plaintiff challenges the ALJ's RFC determination. Fourth, Plaintiff contends that the ALJ did not properly evaluate his credibility. Fifth, Plaintiff argues that the ALJ presented defective hypothetical questions to the vocational expert, rendering the expert's testimony unreliable. This Court will address each argument in turn.

### a. Severity

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07–Civ–10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(1)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05–CV–1371, 2008 WL 2783418, at *6–7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormali-

ty' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97–CV–5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19, 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)).

Upon reconsideration, the ALJ concluded that Plaintiff had the following severe impairments: degenerative arthritis of the lumbar spine, depressive disorder, and anxiety disorder. (T at 17). Plaintiff contends that the ALJ should also have found his insomnia/sleep apnea and obesity to be severe impairments.

#### i. Insomnia/Sleep Apnea

In July of 2007, Susan Hauptfleisch, Plaintiff's treating nurse practitioner, diagnosed Plaintiff as suffering from insomnia. (T at 466). She further indicated that Plaintiff's insomnia, combined with his chronic pain, anxiety, and depression, "significantly" impaired his "concentration, focus, and capabilities." (T at 466). The diagnosis of insomnia was also noted by Dr. Bahram Omidian of Mental Health Connections. (T at 655). A sleep study revealed severe obstructive sleep apnea. (T at 249). Plaintiff testified that he sleeps three to four hours a night, at most, and suffers from serious fatigue as a result. (T at 768).

The ALJ found that Plaintiff's sleep apnea was not a severe impairment within the meaning of the Social Security Regulations. (T at 21). This Court finds the ALJ's decision in this regard is supported by substantial evidence.

Other than Ms. Hauptfleisch's treatment note, Plaintiff does not point to any objective evidence of a significant impairment arising from his sleep difficulties. Moreover, although Ms. Hauptfleisch indicated that Plaintiff's insomnia impaired his concentration, focus, and capabilities, she found that this was in combination with Plaintiff's other impairments (as opposed to being limitations caused solely by the sleep problem). (T at 466). A continuous positive airway pressure ("CPAP") machine was prescribed for Plaintiff, successfully calibrated, and was noted to help Plaintiff's sleeping. (T at 345, 364). An October 2007 treatment note described Plaintiff's sleep as "adequate." (T at 499).

"Conflicts in evidence ... are for the Commissioner to resolve." *White v. Comm'r of Social Security*, No. 06–CV–0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir.1983)). Where, as here, there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. *Id.* Where the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." *Id.* (citing *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002)).

Accordingly, this Court finds that the ALJ's conclusion that Plaintiff's sleep difficulties caused no more than a minimal effect on his ability to work was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

#### ii. Obesity

Plaintiff also contends that the ALJ erred by failing to find obesity as a severe impairment. Although "[o]besity is not in and of itself a disability; ... [it] may be considered severe—and thus medically equal to a listed disability—if alone or in combination with another medically determinable ... impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *Cruz v. Barnhart*, No. 04–CV–9011

(GWG), 2006 WL 1228581, at *10 (S.D.N.Y. May 8, 2006); *see also* SSR 02–1 p; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(Q) (instructing adjudicators to assess carefully the combined effects of obesity and musculoskeletal ailments during Steps 2 and 4 because "[o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system ... The combined effects of obesity with musculoskeletal impairments can be greater than the effect of each ... considered separately.").

Plaintiff's Body Mass Index ("BMI") ranged between 36.4 and 37.3 (T at 480, 538, 558), which is above the threshold of 30 for being considered obese. *See* SSR 02–1 p. His treating physician counseled weight loss through diet and exercise. (T at 538, 558).

The ALJ certainly should have explicitly addressed Plaintiff's obesity and explained whether that condition caused any additional limitations with regard to Plaintiff's ability to perform basic work activities. *See* S.S.R. 02–1 p. However, the ALJ considered and incorporated documents and opinions from the medical record that included references to Plaintiff's weight (including the assessment of his treating physician). (T at 25). This was sufficient under the circumstances. *See, e.g., Guadalupe v. Barnhart,* No. 04–CV–7644, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005) (citing *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir.2004)) (finding that the ALJ "sufficiently, if somewhat indirectly, accounted for Plaintiff's obesity"); *Martin v. Astrue,* No. 5:05–CV–72, 2008 WL 4186339, *3–4, *11–12 (N.D.N.Y. Sept. 9, 2008) (finding ALJ's failure to explicitly address Plaintiff's obesity harmless error, because the ALJ "utilized" the physical limitations from various doctors who considered Plaintiff's obesity).

Moreover, Plaintiff does not point to any assessments of limitations specifically arising from his obesity. Accordingly, while the ALJ should have provided a more detailed explanation concerning the effect of Plaintiff's obesity on his ability to perform basic work-related activities, this Court finds that this particular error does not warrant remand.

### iii. Harmless Error

▮ In addition and in the alternative, even if the ALJ erred by failing to find that Plaintiff's sleep difficulties and/or obesity were severe impairments, he found other impairments to be severe and continued with the sequential analysis.

As such, any errors in with regard to the ALJ's findings at step two of the sequential analysis were harmless. *See Maziarz v. Secretary of Health & Human Services,* 837 F.2d 240, 244 (6th Cir.1987) ("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); *McCartney v. Commissioner of Social Sec.,* Civil Action No. 07–1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009) ("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and

proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); *Portorreal v. Astrue*, No. C.A. 07–296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

### b. Listing § 1.04A

Plaintiff also argues that the ALJ should have found that his impairments met or medically equaled the impairment set forth at § 1.04A of the Listings.

Impairments listed in Appendix 1 of the Social Security Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir.1995); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

 The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing. *See Naegele v. Barnhart*, 433 F.Supp.2d 319, 324 (W.D.N.Y.2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements."). To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Sullivan*, 493 U.S. at 530, 110 S.Ct. 885. To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. *Id.*

To satisfy the impairment set forth at § 1.04A of the Listings, a claimant would need to demonstrate a disorder of the spine, "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord," along with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)...." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A.

 In a single sentence, the ALJ concluded that Plaintiff's "'severe' medically determinable impairments [did] not meet or medically equal the criteria for any impairment" in the Listings, including § 1.04. (T at 21). The ALJ's summary finding on this critical issue was insufficient and must be revisited on remand.

Dr. Amidon, Plaintiff's treating physician, diagnosed "degenerative disc disease with signs of nerve root impingement, on MRI, and clinically." (T at 423). The record documented complaints of radiating pain and numbness. (T at 348, 349). Upon physical examination, Dr. Amidon noted decreased range of motion. (T at 374, 422). Dr. Shayevitz, the consultative examiner, found that all of Plaintiff's lum-

bar spine motions were "limited by back pain." (T at 434). In February of 2007, Dr. Amidon indicated "positive ... straight leg raising test, consistent with nerve root irritation." (T at 423). Dr. Ali, another treating provider, noted a positive straight leg raising test "on the right side with radiating pain." (T at 469).

In the face of this evidence, the ALJ was obliged to explain, in detail, his rationale for finding that Plaintiff's impairments did not meet or medically equal Listing § 1.04A. Instead, as noted above, the ALJ's discussion was clearly inadequate. The lack of a detailed analysis and discussion at this stage of the sequential evaluation causes this Court to question whether the ALJ gave the requisite scrutiny to the question of whether Plaintiff's impairment met or medically equaled Listing § 1.04A. *See Martone v. Apfel*, 70 F.Supp.2d 145, 148 (N.D.N.Y.1999) ("[W]here there is reasonable basis for doubting whether the Commissioner applied the appropriate legal standards, even if the ultimate decision may be arguably supported by substantial evidence, the Commissioner's decision may not be affirmed.")(citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987)).

Moreover, to the extent the ALJ discussed certain of the pertinent evidence in other aspects of his decision, that discussion raises more questions than it answers. For example, the ALJ noted the positive straight-leg raising test results, but found them "transient and ... not ... subject to confirmation over time." (T at 18). However, the ALJ made no attempt to reconcile this conclusion with the fact that positive SLR testing was noted on at least two occasions, by different treating providers, more than a year apart. (T at 423, 469).

For the reasons outlined above, this Court finds that a remand is required. On remand, the ALJ should reconsider the evidence and provide a detailed explanation for his findings at this stage of the sequential evaluation. Because a remand is required at this step, consideration of Plaintiff's remaining arguments may not be necessary. However, out of an abundance of caution, and to ensure a full and proper consideration on remand, this Court will address the balance of Plaintiff's arguments.

### c. RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. *LaPorta v. Bowen*, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In the present case, the ALJ concluded that, through the date last insured, Plaintiff retained the RFC to lift/carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk for 2 hours in an 8 hour workday; sit for 6 hours in an 8 hour workday, and engage in postural activities occasionally. (T at 21). The ALJ further found that Plaintiff could un-

derstand, remember, and perform routine, unskilled tasks with only occasional decision-making required, learn new unskilled tasks; attend to a routine; and work in a low-stress environment, with "low-stress" being defined as "occasional changes in the work setting and occasional contact with the public and co-workers." (T at 22).

■ In October of 2006, Dr. Amidon completed a Medical Source Statement of Ability to Do Work–Related Activities (Physical) form. He opined that Plaintiff could occasionally lift 10 pounds, frequently lift less than 10 pounds, stand/walk for 0–2 hours in an 8 hour workday, and sit for less than 6 hours in an 8–hour workday. (T at 372–73). Dr. Thomas, another treating physician, countersigned Dr. Amidon's 2006 assessment in July of 2009. (T at 556). In July of 2007, Dr. Amidon opined that Plaintiff appeared to be "totally disabled" and found that Plaintiff's "prognosis for adequate recovery to return to work [was] poor." (T at 481). The ALJ was required to afford a presumption of deference to the treating physicians' opinions.[4]

The ALJ afforded "considerable weight" to the opinions of Dr. Amidon and Thomas "in so far as they indicate [that Plaintiff] can perform sedentary work." (T at 25). The ALJ discounted the treating physicians' opinions to the extent they suggested an inability to perform sedentary work by pointing to "clinical findings that show no neurological deficits" and Plaintiff's "ability to perform activities of daily living." (T at 25).

■ In so doing, the ALJ implicitly rejected, for example, the treating physicians' assessment that Plaintiff could sit for less than 6 hours in an 8–hour workday. (T at 556). This was significant because the inability to sit for prolonged periods impacts the ability to perform sedentary work. See Perez v. Chater, 77 F.3d 41, 46 (2d Cir.1996). ("Sedentary work ... generally involves up to ... six hours of sitting in an eight-hour workday."). However, the ALJ did not explain how the alleged lack of neurological deficits undermined the limitation assessed by the treating physicians with regard to sustained sitting. As to activities of daily living, Plaintiff testified that sitting up "for any length of time" aggravated his condition and made it "very painful." (T at 752). Plaintiff estimated that he could not sit for more than 30 minutes, and no more than 10 minutes without needing to change positions. (T at 790). The ALJ noted that Plaintiff used a computer and found that this suggested an ability to perform sedentary work (T at 25). However, Plaintiff testified that his computer use was "very limited." (T at 753). He performed some

---

**4.** Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir.2004); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); *see also de Roman v. Barnhart*, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003); *Shaw*, 221 F.3d at 134; *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998); *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir.1998).

household chores, but on a limited basis and with frequent breaks. (T at 760–61). Moreover, the performance of basic activities of daily living does not disqualify a person from being disabled under the Social Security Act. Indeed, it is well-settled that " "[s]uch activities do not by themselves contradict allegations of disability," as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Woodford v. Apfel*, 93 F.Supp.2d 521, 529 (S.D.N.Y.2000); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act.").

Lastly, the ALJ relied on the opinion of Dr. Shayevitz, the consultative examiner, in making his RFC determination. (T at 25). However, Dr. Shayevitz did not render an opinion as to Plaintiff's ability to sit for prolonged periods. (T at 435). As such, the ALJ should reweigh and reconsider the evidence in light of the concerns outlined above, with particular focus on the medical opinions and evidence concerning Plaintiff's ability to sit for prolonged periods.

#### d. Credibility

Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims, and they must be thoroughly considered. *See Ber v. Celebrezze*, 332 F.2d 293 (2d Cir.1964). Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. *See Brandon v. Bowen*, 666 F.Supp. 604, 609 (S.D.N.Y.1987).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96–7p; *Gernavage v. Shalala*, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel*, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96–7p:

First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms....

Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;

2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;

3. Precipitating and aggravating factors;

4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;

5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of .... pain or other symptoms;

6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;

7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

 If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Young v. Astrue*, No. 7:05–CV–1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987)).

 In the present case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible. (T at 22). The ALJ should revisit this determination on remand after reconsidering the medical evidence as outlined above. In particular, the ALJ should give careful consideration to Plaintiff's testimony regarding his ability to sit for prolonged periods (752–53), which testimony was consistent with the assessment of the treating physicians (T at 556). To the extent the ALJ determines that Plaintiff's testimony concerning his limitations is contradicted by his activities of daily living, the ALJ should consider whether those activities (e.g. limited household chores, sitting at a computer for brief periods of time) actually indicate an ability to sit for sustained periods.

### e. Vocational Expert

During the second administrative hearing, the ALJ received testimony from David Festa, a vocational expert. (T at 792–805). The ALJ presented the vocational expert with a series of hypotheticals based on varying assessments of Plaintiff's RFC and asked the expert to opine as to whether jobs exist in significant numbers in the national economy that a person with that RFC would be able to perform.

 A hypothetical given to a vocational expert is appropriate and may be relied upon by the ALJ if the hypothetical fully encompasses the claimant's limitations. *Magee v. Astrue*, No. 5:05–CV–413, 2008 WL 4186336, at *20 (N.D.N.Y. Sept. 9, 2008) (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987)). "If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability." *Id.*

 Here, the ALJ's presented two hypothetical scenarios that assumed an ability to sit for 6 hours in an 8 hour day. (T at 795, 797). The vocational expert responded that jobs exist in significant numbers in the national economy that such a claimant could perform. (T at 795, 797). The ALJ also asked whether significant jobs exist that could be performed by a hypothetical claimant limited to sitting no more than 30 minutes at a time. (T at 799). The vocational expert opined that such a claimant "would not be able to work on a full-time consistent basis." (T at 799). The ALJ's RFC determination included an

ability to sit for 6 hours in an 8 hour workday and the ALJ then relied on the hypotheticals that assumed that ability in support of his finding that Plaintiff retained the RFC to perform jobs that exist in significant numbers in the national economy. (T at 27).

For the reasons outlined above, there are good reasons to think the ALJ did not properly evaluate the evidence, including in particular the treating physicians' opinion concerning Plaintiff's ability to sit for prolonged periods. This rendered the ALJ's reliance on the first two hypotheticals (which assumed the ability to sit for at least 6 hours in an 8 hour workday) suspect. Remand for reconsideration on this point is accordingly necessary.

### 3. Remand

 "Sentence four of Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart,* 388 F.3d 377, 385 (2d Cir. 2004) (quoting 42 U.S.C. § 405(g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would ... plainly help to assure the proper disposition of [a] claim." *Kirkland v. Astrue,* No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies as outlined above, this case is remanded for further proceedings consistent with this Decision and Order.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is DENIED, that Plaintiff's Motion for Judgment on the Pleadings is GRANTED, and that this case is remanded for further administrative proceedings pursuant to sentence four of Section 405(g).

### V. ORDERS

It is hereby ORDERED that the Commissioner's motion for judgment on the pleadings is DENIED; and it is further

ORDERED, that Plaintiff's motion for judgment on the pleadings is GRANTED; and it is further;

ORDERED, that this case is remanded to the Commissioner of Social Security for further proceedings consistent with this Decision and Order; and it is further

ORDERED, that the Clerk of the Court shall enter judgment accordingly.

SO ORDERED.